Kimberly **SPECIALE**, Plaintiff–
Appellant,

v.

Katherine **SEYBOLD**, Defendant,

Administrative Committee of the Wal–
Mart Stores, Inc. Associates Health and
Welfare Plan, Respondent–Appellee.

No. 97–3057.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 25, 1998.

Decided June 22, 1998.

James E. Ocasek (argued), Cooney & Conway, Chicago, IL, for Plaintiff–Appellant.

John J. Mangan, Rooks, Pitts & Poust, Lisle, IL, for Defendant.

William A. Chittenden, III, Douglas J. Varga (argued), Peterson & Ross, Chicago, IL, for Respondent–Appellee.

Before POSNER, Chief Judge, WOOD, Jr., and DIANE P. WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Kimberly Speciale ("Speciale") suffered injuries as the result of an automobile accident with Katherine Seybold ("Seybold"). The major portion of Speciale's medical expenses was paid by Speciale's health plan offered by her employer, Wal–Mart Stores, Inc. ("Wal–Mart"). The remaining providers filed medical liens.

After filing a tort claim against Seybold in state court, Speciale agreed to settle the claim for $45,000. Speciale then filed a Motion to Adjudicate Liens. Asserting ERISA preemption, Wal–Mart's plan administrator removed the adjudication issue to the district court for a determination of the parties' respective rights. The district court awarded Wal–Mart the full amount of the settlement less a reasonable attorney's fee, leaving the other lienholders unpaid. Speciale appeals, alleging that the cause was erroneously removed to the federal court and should have remained in the state court for lien adjudication.

## I. BACKGROUND

Wal–Mart Stores, Inc. provides its employees with welfare benefits through Wal–Mart Stores, Inc. Associates Group Health Plan (the "Plan"), a self-funded employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. The administrator of this Plan is the respondent, Administrative Committee of the Wal–Mart Stores, Inc. Associates Health and Welfare

Plan. The Plan includes a provision requiring participants to reimburse the Plan for "benefits paid by the Plan to the extent of any payment made by a person responsible for the condition giving rise to the medical expenses paid."

Speciale was an employee of Wal–Mart and a participant in the Plan. As a result of the automobile accident, Speciale sustained injuries and incurred medical expenses totaling $70,563.91. The Plan paid $54,051.07 towards the costs of Speciale's medical care, with a remaining $16,512.84 left unpaid. The fifteen unpaid providers filed medical liens as allowed under the Illinois statutes.

Speciale filed a personal injury action against Seybold in an Illinois state court and accepted $45,000 in settlement. Wal–Mart sent Speciale a notice stating that, pursuant to the terms of the Plan, it was entitled to reimbursement from the settlement between Speciale and Seybold. Speciale filed a motion to adjudicate which notified the court of the agreed-upon settlement and requested the court to apportion the fund. In the motion, Speciale listed sixteen providers, including Wal-Mart, who were asserting claims against the settlement fund. Wal–Mart, acting independently, removed the action to the federal district court under 28 U.S.C. § 1441(b), maintaining that because the Plan arose under and was governed by ERISA, Speciale's motion to adjudicate was completely preempted. The district court concluded that the claim was preempted under section 502(a) of ERISA, 29 U.S.C. § 1132(a), and entered judgment in favor of Wal–Mart, requiring Speciale to reimburse Wal–Mart for the full amount of her settlement, less a reasonable attorney's fee.[1]

On appeal, Speciale argues that the district court did not have federal jurisdiction based on ERISA preemption because the motion to adjudicate fell under her well-pleaded complaint which alleged a state law claim of personal injury, neither of which presented a federal question nor permitted complete preemption under ERISA.

## II. ANALYSIS

■ The determination of jurisdiction on removal involving an ERISA issue is based upon the well-pleaded complaint rule, the ERISA "complete preemption" exception to that rule and the defense of "conflict preemption" under ERISA, see *Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir. 1997); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482 (7th Cir.1996); *Rice v. Panchal*, 65 F.3d 637 (7th Cir.1995), and requires us to begin with the principles governing removal jurisdiction of the federal courts under 28 U.S.C. § 1441. *Rice*, 65 F.3d at 639. Under that statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). District courts have original jurisdiction over cases concerning a "federal question," that is, cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

In determining federal jurisdiction, the court generally first reviews the plaintiff's complaint, because "[i]t is a long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (citations omitted). As we stated in *Jass*, "The issues raised in the plaintiff's complaint, not those added in the defendant's response, control the litigation." *Jass*, 88 F.3d at 1482. The Supreme Court emphasized that "[t]he paramount policies embodied in the well-pleaded complaint rule [are] that the plaintiff is master of the complaint ... and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 398–99, 107 S.Ct. 2425, 2433, 96 L.Ed.2d 318 (1987). This prevents the defendant from controlling the liti-

---

1. Neither party challenged the appropriateness of awarding reasonable attorney's fees from the settlement fund.

gation and obtaining a transfer to federal court by federal preemption when the defendant raises a federal question in the responsive pleadings. *See Jass,* 88 F.3d at 1486; *Rice,* 65 F.3d at 639.

█ In *Avco Corp. v. Aero Lodge No. 735, etc.,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), the Supreme Court created an exception to the well-pleaded complaint rule where Congress has completely preempted a given area of state law. Although the "complete preemption" doctrine has become fully accepted, confusion remains because the complete preemption doctrine "is not a preemption doctrine but rather a federal jurisdiction doctrine." *Lister v. Stark,* 890 F.2d 941, 943 n. 1 (7th Cir.1989); *Jass,* 88 F.3d at 1487. Complete preemption permits "recharacterization" of a plaintiff's state law claim as a federal claim so that removal is proper. *Lister,* 890 F.2d at 943. Whether or not a cause of action has been completely preempted is determined by the intent of Congress. *Taylor,* 481 U.S. at 66, 107 S.Ct. at 1547–48. In *Taylor,* the Supreme Court expanded the "complete preemption" exception to include all state actions falling within the scope of § 502(a)[2] of ERISA. *Id.* at 67, 107 S.Ct. at 1548. Therefore, "federal subject matter jurisdiction exists if the complaint concerns an area of law 'completely preempted' by federal law, even if the complaint does not mention a federal basis of jurisdiction." *Jass,* 88 F.3d at 1487 (construing *Rice,* 65 F.3d at 642).

█ However, there is a second federal "preemption" doctrine. This doctrine serves as a defense to a state law action but does *not* confer federal question jurisdiction. This doctrine is known as "conflict preemption." Conflict preemption is based upon § 514(a)[3] of ERISA. "Complete preemption" under § 502(a) encompasses all claims by a partici-

pant or beneficiary to enforce his rights under an ERISA plan whereas "conflict preemption" under § 514(a) preempts any state law that may "relate to" an ERISA plan, but is not a basis for federal jurisdiction. *See Jass,* 88 F.3d at 1488.

█ Wal–Mart argues that complete preemption under § 502(a) has occurred. In determining whether a claim is within the scope of § 502(a), three factors are examined:

> (1) whether the "plaintiff" [i]s eligible to bring a claim under that section; (2) whether the plaintiff's cause of action falls within the scope of an ERISA provision that the plaintiff can enforce via § 502(a), and (3) whether the plaintiff's state law claim cannot be resolved without an interpretation of the contract governed by federal law.

*Jass,* 88 F.3d at 1487 (internal quotation marks and citations omitted). Although Speciale was a plaintiff entitled to bring a claim under the Wal-Mart plan, her claim of personal injury was not a cause of action that falls within the scope of an ERISA provision nor did her state law claim require resolution of an interpretation of the contract governed by federal law. Where the plaintiff seeks recovery for breach of a duty imposed by state law, and the claim does not involve the interpretation of contract terms, there is no complete preemption. *Rice,* 65 F.3d at 644. Where state law "has the effect of creating a qualitative standard (e.g., 'bad faith,' 'improper') by which the performance of a contract is evaluated, then that state law is completely preempted." *Id.* In Rice, the plaintiff filed a cause of action against his insurer, an ERISA health care benefits plan, claiming the plan was liable for the medical malpractice of one of the plan's providers under the state law of respondeat superior. *Id.* at 638.

**2.** Section 502(a) provides:
A civil action may be brought—
(1) by a participant or beneficiary—
(A) for the relief provided for in subsection (c) of this section, or
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

**3.** Section 514(a) provides:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

In examining this theory of agency and tort liability, we held that the plaintiff's claim "did not involve the interpretation of the ERISA plan, and cannot be recharacterized as a suit within the scope of § 502(a)(1)(B)." *Id.* at 645. As in *Rice,* where we recognized that the medical malpractice claim could not be "recharacterized as a suit to enforce [plaintiff's] rights under the terms of a plan that is within the scope of § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a), and the claim is not 'completely preempted' under § 502(a)," neither can Speciale's request for apportionment be recharacterized as a suit to enforce her rights under the terms of the Plan and cannot be completely preempted under § 502(a).

*Blackburn v. Sundstrand Corp.,* 115 F.3d 493 (7th Cir.1997), a nearly identical scenario to the immediate case, is directly controlling. In *Blackburn,* two beneficiaries of an ERISA plan were injured in an automobile accident. *Id.* at 494. They filed suit in an Illinois court against the driver of the other car and accepted a settlement. *Id.* Two parties had claims against the settlement fund, the Blackburns' attorney and their ERISA welfare benefit plan. *Id.* The Blackburns filed a petition in state court to apportion the fund. *Id.* The fund administrator removed the case to federal court under 28 U.S.C. § 1441(b). *Id.* We stated most emphatically that removal under ERISA preemption was improper based upon the well-pleaded complaint rule and the determination that "not even the most expansive reading of ERISA covers motor vehicle collisions, just because part of the recovery may inure to the benefit of a plan." *Id.*

The element of § 1331 "federal question" jurisdiction arose for the first time in non-defendant Wal–Mart's notice of removal. Wal–Mart removed the motion to adjudicate under 28 U.S.C. § 1441(b),[4] which allows removal from state court to federal court for "[a]ny civil action of which the district courts have original jurisdiction founded on a claim of right arising under the Constitution, treaties, or laws of the United States." The defendant in *Blackburn* also removed the case under 28 U.S.C. § 1441(b). We stated that a tort suit based on a personal injury claim arising from an automobile accident "did not arise under the Constitution, treaties, or laws of the United States." *Blackburn,* 115 F.3d at 494. In *Blackburn,* the plaintiffs filed a separate petition in state court to apportion a settlement fund. *Id.* We stated that "the petition to apportion the fund invoked the ancillary jurisdiction of the state court and was part of that original, non-removable action." *Id.* Speciale's motion to adjudicate does not present a federal question under 28 U.S.C § 1331 and her case was improperly removed to federal court under 28 U.S.C. § 1441(b).[5] Unlike *Blackburn,* Speciale did not file her request for apportionment as an original petition but as a motion in the personal injury claim, making it an integral part of the original suit. In *Blackburn,* we held that, because "neither the original tort action nor the petition to adjudicate adverse claims to the settlement fund sought a payment from the plan, Section 502 is irrelevant." *Id.* at 495. We also found that the defendant's arguments and the district court judgment which upheld the removal to federal court, "rest exclusively on § 514(a) ... [which does] not support remov-

---

4. Although the issue of Wal–Mart's removal under § 1441(b) was not raised by the appellant, we feel it necessary to clarify the fact that Wal–Mart's removal was procedurally defective. A prerequisite to removal under § 1441(b) is § 1441(a), which allows for removal to a district court, "by the defendant or the **defendants**...." 28 U.S.C. § 1441(a) (emphasis added). As we noted in *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 368 (7th Cir.1993), unless all defendants consent to removal, or the petition explains why the other defendants have not consented, the removal is considered defective. Wal–Mart, although not a "defendant" per se, but if viewed as a type of "intervening defendant," failed to comply with procedural requirements. Wal–Mart was one of

16 lienholders named in the plaintiff's motion to adjudicate. However, Wal–Mart filed the removal notice independently, without the consent or cooperation of the remaining 15 lienholders. Removal, therefore, was not procedurally appropriate. Although Wal–Mart argued that § 1441(c) would allow them to remove the action independently, this response is moot because the motion was filed under § 1441(b).

5. In addition, removal under diversity jurisdiction and § 1441(a) would have been impossible, for the amount in controversy was far below the $75,000 required by diversity jurisdiction.

al under § 1441(b)." *Id.* A federal defense to a claim arising under state law does not create federal jurisdiction and does not authorize removal. *Id.* Wal–Mart may perhaps choose to argue that under the § 514(a) conflict preemption defense, they have a first priority claim as to the apportionment of the fund between it and the other statutory lienholders, but they do not have federal jurisdiction in this case.

The district court judge did not necessarily err in relying on *Fravel v. Stankus*, 936 F.Supp. 474 (N.D.Ill.1996), and *Musinski v. Staudacher*, 928 F.Supp. 739 (N.D.Ill.1996),[6] when he issued his Memorandum Opinion and Order of December 19, 1996, which denied remand to state court, because the district judge did not have the advantage of the *Blackburn* decision at that time. We note that the judge did make reference to *Blackburn* in his Memorandum and Opinion of July 17, 1997, concerning reasonable attorney's fees to be deducted from a common fund. The judge cited *Blackburn* in ordering that the common fund doctrine was not preempted by ERISA and that the plaintiff's attorney was entitled to reasonable fees deducted from the settlement fund prior to reimbursing Wal–Mart.

## III. CONCLUSION

■ We find that in a state cause of action where there are adversarial claims to a settlement fund between an ERISA plan subrogation claim and other statutory medical liens, there is no preemption under § 502(a) and the allocation of the funds is a matter for the state court under which original jurisdiction arose. The plaintiff's personal injury case has been settled. Wal–Mart's subrogation right has not been questioned. What remains is simply a determination on the apportionment of the funds under state law. For these reasons, we reverse and remand this case to the district court with directions to remand the case to state court for lack of federal subject matter jurisdiction.

6. In *Fravel v. Stankus*, plaintiffs were injured in an automobile accident and filed suit in state court against the other driver. *Fravel*, 936 F.Supp. at 476. One of the plaintiffs was insured under her father's ERISA plan, which had filed a lien pursuant to a subrogation/reimbursement agreement. *Id.* The minor plaintiff settled, then filed a motion to adjudicate, invoking state law that forbids subrogation claims against minors' funds. *Id.* The plan removed the adjudication filing to federal district court under § 502(a). *Id.* The court refused plaintiff's motion to remand to state court. *Id.* at 480.

*Musinski v. Staudacher* concerned an ERISA plan beneficiary who was injured in an automobile accident. *Musinski*, 928 F.Supp. at 740. The beneficiary filed a tort action against the other driver in state court. *Id.* After settling with the other driver, plaintiff filed for adjudication of a lien asserted by the plan under its subrogation/indemnification provision. *Id.* The court held lien adjudication was displaced by § 502(a) and denied plaintiff's motion to remand to state court. *Id.* at 744.