In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1040

TIMOTHY A. ROGERS, WENDY A. ROGERS,
and ALAN WESTFALL, on behalf of themselves
and all others similarly situated,

*Plaintiffs-Appellants,*

*v.*

TYSON FOODS, INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01 C 610—**Michael J. Reagan**, *Judge.*

ARGUED SEPTEMBER 18, 2002—DECIDED OCTOBER 22, 2002

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Plaintiffs, who are consumers of Tyson chicken, sued in state court alleging that Tyson fraudulently infused its chicken products with water and concealed the deceptive practice from consumers. Tyson removed the lawsuit to federal court. Plaintiffs appeal the district court's denial of their motion to remand to state court and the subsequent dismissal of this case. Because we conclude that the district court lacked the federal ques-

tion jurisdiction necessary to remove this action from state court, we reverse with instructions to remand this suit to state court.

## I.

Tyson Foods, Incorporated ("Tyson") sells chicken throughout the United States. Timothy and Wendy Rogers, and Alan Westfall, ("plaintiffs") consume Tyson chicken. On August 14, 2001, plaintiffs filed a putative class action in the Madison County, Illinois Circuit Court against Tyson, alleging that Tyson violated the Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 ILES § 505/1, *et seq.*, by inflating the weight of chicken carcasses with water during the processing of the chicken, and by concealing this practice from the public. Plaintiffs' first claim was for consumer fraud under the Illinois statute. Plaintiffs' second claim was for unjust enrichment.

Pursuant to 28 U.S.C. § 1441(a), Tyson timely removed this case to the United States District Court for the Southern District of Illinois. In its notice of removal, Tyson alleged that the district court had federal question jurisdiction because the Poultry Products Inspection Act, 21 U.S.C. § 451, *et seq.* ("PPIA"), triggers the doctrine of complete preemption. Plaintiffs filed a motion to remand, and Tyson filed a motion to dismiss. The district court denied the motion to remand, basing its decision on the PPIA's preemption clause, 21 U.S.C. § 467e. Section 467e declares that "[m]arking, labeling, packaging, or ingredient requirements (or storage or handling requirements found by the Secretary to unduly [sic] interfere with the free flow of poultry products in commerce) in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Colum-

bia . . . ." 21 U.S.C. § 467e. The district court reasoned that § 467e "completely preempts [state] marking, labeling, packaging, and ingredient requirements for poultry [and that] [p]laintiffs' claims fall within the scope of the pre-empted field." The district court then granted Tyson's motion to dismiss, reasoning that the PPIA provides plaintiffs with no basis for relief. On appeal, plaintiffs contend that the district court lacked jurisdiction over this case and therefore erred in denying their motion to remand.

## II.

Because the propriety of removing a state action to fed-eral court is a question of federal jurisdiction, we review *de novo* the denial of a motion to remand to state court. *Seinfeld v. Austen*, 39 F.3d 761, 763 (7th Cir. 1994). Removal of a state civil suit to federal court is proper where "the district courts of the United States have original juris-diction." 28 U.S.C. § 1441(a). As diversity of citizenship is not alleged, the removal's propriety hinges on wheth-er the district court had federal question jurisdiction. *See Seinfeld*, 39 F.3d at 763.

Plaintiffs' complaint asserts solely state law claims. Un-der the well-pleaded complaint doctrine it would thus ap-pear at first blush that the district court lacked subject matter jurisdiction and that the complaint was not re-movable. *See Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 966 (7th Cir. 2000). Tyson argues, and the dis-trict court held, however, that removal was justified under the doctrine of complete preemption, which is a corollary to the well-pleaded complaint rule. *Rice v. Panchal*, 65 F.3d 637, 640 n.2 (7th Cir. 1995). Complete, or field, preemp-tion exists where "Congress has so completely preempted

a particular area that no room remains for any state reg-ulation and the complaint would be 'necessarily federal in character.'" *Bastien v. AT&T Wireless Serv., Inc.*, 205 F.3d 983, 986 (7th Cir. 2000) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987)). We find com-plete preemption where there is a "congressional intent in the enactment of a federal statute not just to provide a federal defense to a state created cause of action but to grant a defendant the ability to remove the adjudica-tion of the cause of action to a federal court *by transform-ing the state cause of action into a federal cause of action.*" 14B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3722.1 (3d ed. 1998 & Supp. 2002) (emphasis added); *see also Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir. 1996) (reasoning that complete preemption "converts a state law claim into an action arising under federal law") (in-ternal quotation omitted).

In that vein, plaintiffs argue that "'complete preemp-tion' cannot exist here because there is no private right of action under the PPIA" into which either of their state law causes of action could be transformed. Significantly, Tyson concedes that the PPIA does not create a private right of action. Nevertheless, it argues that a private right of action is not a prerequisite to complete preemption. On this dispositive point, precedent compels us to agree with plaintiffs.

As this circuit interprets the law, the "ability to bring suit under [federal law] is an element of 'complete pre-emption.'" *Vorhees v. Naper Aero Club, Inc.*, 272 F.3d 398, 404 (7th Cir. 2001) (citing *Rice*, 65 F.3d at 641). Logically, complete preemption would not be appropriate if a fed-eral remedy did not exist in the alternative. Otherwise, a plaintiff would be forced into federal court with no relief

available for "vindicating the same interest." *Railway Labor Executives Ass'n v. Pittsburgh & L.E.R.R.*, 858 F.2d 936, 942 (3d Cir. 1988). "Preemption is what wipes out state law, but the foundation for removal is the creation of federal law to replace state law." *Rice*, 65 F.3d at 641 (quoting *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1075 (7th Cir. 1992)). Accordingly, "unless the federal law has created a federal remedy—no matter how limited—the federal law, of necessity, will only arise as a defense to a state law action" and will thus not give rise to the federal question jurisdiction underlying complete preemption. *Id.*; *see also McQuerry v. American Med. Sys., Inc.*, 899 F. Supp. 366, 370 (N.D. Ill. 1995) (reasoning that, where there is no federal private right of action, "complaints in such cases do not even arguably raise a federal question and therefore are inappropriate for removal").

Most circuits share our view that the existence of a private right of action under federal law is an antecedent of complete preemption. *See Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184 (9th Cir. 2002); *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996); *Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 260 (6th Cir. 1996); *Hudson Ins. Co. v. American Elec. Corp.*, 957 F.2d 826, 830 (11th Cir. 1992); *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157, 1164-65 (5th Cir. 1989); *Railway Labor Executives Ass'n*, 858 F.2d at 942. *But cf. Husmann v. Trans World Airlines, Inc.*, 169 F.3d 1151, 1152-54 (8th Cir. 1999) (finding complete preemption without discussing whether there was a replacement federal cause of action); *id.* at 1154-55 (Morris Sheppard Arnold, J., dissenting) (arguing that the defendant's failure to point to a private right of action in the statute should have been fatal to its argument for complete preemption).

Tyson cites two decisions of this court as standing for the opposite proposition. First, Tyson maintains that, in

*Bastien v. AT&T Wireless Serv., Inc.*, this court "flatly rejected the assertion that a federal remedy must exist for complete preemption." Second, Tyson quotes *Lister v. Stark*, 890 F.2d 941 (7th Cir. 1989) for the proposition that "the availability of a federal remedy is not a prerequisite for federal preemption." *Id.* at 946. We find both arguments unpersuasive.

In *Bastien*, the district court held that the Federal Communications Act of 1934, 47 U.S.C. § 332(c)(3)(A) ("FCA"), completely preempted claims regarding mobile-phone rates and market entry, and then granted the defendant's motion to dismiss for failure to state a claim. *Bastien*, 205 F.3d at 986. The plaintiff only appealed the former ruling, that the FCA effected complete preemption; he did not appeal the dismissal for failure to state a claim. *Id.* Concluding that Congress intended the FCA completely to preempt the field, we affirmed the district court's decision that the FCA completely preempted the plaintiff's claims; we did not, however, address the question of whether complete preemption could exist where the federal statute provided no private right of action. *Id.*[1] Tyson would have us infer that a federal remedy is not a necessary element of complete preemption from the *Bastien* panel's failure to discuss whether the FCA created a private right of action. For two reasons, we decline Tyson's invitation to read *Bastien* so broadly.

First, the FCA creates a private cause of action. *See* 47 U.S.C. § 207; *Gilmore v. Southwestern Bell Mobile Sys.*, 156 F. Supp. 2d 916, 922 (N.D. Ill. 2001); *DeCastro v. AWACS,*

---

[1] *Bastien*'s text does not make it clear whether the plaintiff's failure to appeal the district's court's ruling that he had failed to state a claim led this court to conclude that it did not need to discuss the "no federal remedy" issue.

*Inc.*, 935 F. Supp. 541, 549-50 (D.N.J. 1996). The holding of *Bastien* is therefore not incompatible with the settled rule that a federal remedy is a precondition to the existence of complete preemption.

Second, it would be a mistake to read *Bastien* for the broad proposition that this Circuit has "flatly rejected the assertion that a federal remedy must exist for complete preemption." Not only did the *Bastien* panel not "flatly reject" the federal remedy requirement, it did not even address the issue. As discussed above, this court's earlier opinion in *Rice* specifically held that a private right of action under federal law is an antecedent to complete preemption. This holding was in place before *Bastien* and the *Bastien* decision says nothing that alters the holding in *Rice*. Therefore, *Rice* remains good law and *Bastien* does not undermine the rule that a federal private right of action is an element of complete preemption.

Tyson also relies on *Lister v. Stark* to support its claim that for complete preemption a private right of action is unnecessary. In *Lister*, we held that the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), completely preempted the plaintiff's state law claims, and that the plaintiff failed to state a claim under the civil enforcement provisions of ERISA. *Lister*, 890 F.2d at 946. Unlike the PPIA, however, ERISA does create a private right of action. *See id.* at 944 (citing 29 U.S.C. § 1132). It is true that in *Lister* the plaintiff's claim for breach of an oral contract was not available under ERISA's remedial provisions. *Id.* at 946. Nevertheless, *Lister* stands for the unexceptional proposition that complete preemption can exist even where a particular plaintiff seeks a remedy that Congress chose not to provide when it effected complete preemption. "The policy choices reflected in the inclusion of certain remedies and the

exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." *Id.* (quoting *Pilot Life Ins. Co. v. Dedaux*, 481 U.S. 41, 54 (1987)). A federal cause of action need not provide the same remedies as the pre-empted state cause of action. "The chance that the 'nature of relief' available under federal law might be different from that under state law does not affect the jurisdictional analysis." *Schmeling*, 97 F.3d at 1343 (discussing *Avco v. Aero Lodge No. 735*, 390 U.S. 557 (1968)).

Finally, Tyson contends that the PPIA expressly denies plaintiffs' causes of action, and then cites *Aaron v. National Union Fire Ins. Co.*, 876 F.2d at 1165 for the proposition that "express denial of a cause of action may serve the same function as the creation of a federal cause of action" for purposes of complete preemption.

Tyson's argument is without merit. In *Aaron*, the Fifth Circuit rejected the precise contention that Tyson makes here:

> The language from *Franchise Tax* [*Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983)] quoted above suggests that the express denial of a cause of action may serve the same function as the creation of a federal cause of action. . . . However, the "express denial" of a cause of action will always be present where federal law preempts state law. Every time federal preemption is asserted as a defense, and the defendant seeks to use that defense as a basis for removal jurisdiction, the defendant can assert that the "express denial" language of *Franchise Tax* is justified. *Something more must therefore be required to create removal jurisdiction if the well-pleaded complaint rule is to have continued vitality, a result clearly indicated by the cases.*

*Aaron*, 876 F.2d at 1165 (emphasis added). We agree with the Fifth Circuit on this point because, as we made clear in *Rice*, the "something more . . . required to create removal jurisdiction" includes a private right of action under the federal statute. We also note that district courts within the Fifth Circuit interpret *Aaron* as holding that a private right of action is a prerequisite to complete preemption. *See, e.g., Sherron v. Private Issue by Discover*, 977 F. Supp. 804, 807 (N.D. Miss. 1997); *City of Laredo v. Texas Mexican Railway Co.*, 935 F. Supp. 895, 897 (S.D. Tex. 1996). Tyson's reliance on *Aaron* is, accordingly, misplaced.

### III.

Tyson does not dispute the fact that the PPIA provides no private right of action, yet complete preemption can only exist where, *inter alia*, the federal statute provides a private right of action. Therefore, the PPIA does not trigger complete preemption. We accordingly conclude that removal of this action to federal court was improper, and we must reverse and remand this case to the district court with directions to remand the action to state court for lack of federal subject matter jurisdiction. Given the absence of complete preemption, we are obligated to rule in plaintiffs' favor. Clearly, however, this preliminary decision is not the last word on preemption. Although the PPIA provides no private right of action, it and the existing and pending federal regulations maintain wide control over the processing and distribution of poultry products nationally.

Tyson contends that plaintiffs' complaint essentially attacks Tyson for failing to meet labeling requirements that exceed the PPIA's labeling strictures, and that the PPIA preempts state regulation of labeling that exceeds

federal requirements. Assuming that Tyson correctly characterizes plaintiffs' complaint, there is certainly precedent for its preemption claims. *See National Broiler Council v. Voss*, 44 F.3d 740, 743-47 (9th Cir. 1994) (holding that the PPIA's preemption clause expressly preempted state labeling requirements in addition to, or different than, federal labeling requirements). *National Broiler Council*, however, was a case of ordinary, and not complete, preemption. *See Hue v. Farmboy Spray Co., Inc.*, 896 P.2d 682, 691 (Wash. 1995) (citing *National Broiler Council* in support of ordinary preemption). Ordinary preemption is an affirmative defense that Tyson may assert in state court; it is not a basis for federal jurisdiction under the complete preemption doctrine. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1313 (11th Cir. 2001) (reasoning that "our conclusion that the complete preemption doctrine does not provide a basis for federal jurisdiction in this action does not preclude the parties from" pleading the defense of ordinary preemption in state court). But for the lack of a federal remedy, the federal preemption, although now labeled "ordinary," nevertheless appears to be extensive. Just how extensive this ordinary preemption may be, however, must now be determined in the Illinois state court system.

REVERSED and REMANDED.

A true Copy:

        Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*